DAVID B. NYE & another *vs.* ANDREW DUTTON.

Suffolk.    November 16, 1904. — March 4, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Negligence,* Employer's liability.

An appliance does not become a part of the ways, works or machinery of an employer within the meaning of the employers' liability act until it becomes a part of the permanent structure or plant, and, if a workman is killed through the negligence of a fellow servant engaged in adjusting a new appliance to replace an old one which has been broken, his next of kin cannot recover from the employer for his death.

LATHROP, J.    This is an action under the St. of 1887, c. 270, § 2, by the next of kin, namely, the parents, of Waldo E. Nye, to recover for his being instantly killed, or dying without conscious suffering, on February 9, 1900, while in the employ of the defendant.    We shall assume for the purposes of the case that the plaintiffs were " dependent upon the wages of the employee " within the statute, though the evidence on this point is very meagre, and shall consider the case upon the merits.

The declaration contains two counts, both under the St. of 1887, c. 270.    The first alleges a defect in the condition of the ways, works and machinery, and the second the negligence of a superintendent.    At the trial in the Superior Court, at the close of the evidence for the plaintiffs, the judge directed a verdict for the defendant; and the case is before us on the plaintiffs' exceptions.

The defendant carried on the business of wholesale upholstery supplies at 18 Canal Street, Boston, occupying the basement, street floor and four floors above.    There was a freight elevator on the Merrimac Street side which ran from the basement to the top floor.    The power was electricity.    At each floor there was an opening into the elevator well and a sliding gate or barrier consisting of two pieces of wood fastened together so as to form a right angle, the short arm being perpendicular and the long arm horizontal across the opening.    An automatic device on the elevator snapped into an iron casting fastened

to the gate, and when the elevator ascended lifted the gate to the ceiling of each floor; when the elevator passed the ceiling, the gate descended of its own weight. The iron casting on the gate at the fourth floor had been broken a day or two before the accident. One Bingham, who had charge of the whole building, and gave orders to the men, told one Hopkins to go up and fix the gate, and gave him a new iron casting like that put in evidence. Hopkins had been at work for the defendant since the September before the accident, and since the November before the accident Hopkins had had charge of the motor operating the elevator and was in charge of seeing that the elevator was kept properly oiled. Small repairs were done by Hopkins as often as by any one, and this had been his work ever since he had been there. The defendant furnished some tools, namely, files, saw, two or three hammers, screw drivers and bits, for this work.

On the day of the accident, Hopkins, after receiving the order from Bingham, went to the fourth floor with the new casting. A portion of the old casting was still fastened to the gate. The casting was attached to the gate by two bolts which passed through the wood work and through the casting and it was held in place by nuts on the ends of the bolts. Hopkins first took off the old casting and took out all the bolts, then he put one of the bolts through the lower hole and hung the new casting on it, but without putting on the nut to hold it firmly in place. While Hopkins was at work putting on the casting, Nye came up and told him to come down stairs to help put some cases on the elevator. He went down and he and Nye put some cases on the elevator and went up to the fourth floor. The cases were unloaded. Nye and the elevator went to the basement; and Hopkins resumed his work. He intended slightly to lower the casting by putting the upper bolt in the lower hole, and this made it necessary for him to bore a new hole in the gate for the lower bolt. Without securing the new casting through which he had placed the top bolt, by screwing on a nut or in any other way, he proceeded to bore a new hole in the gate for the lower bolt. He was standing on the floor at the time, leaning over the gate and measuring for the lower hole. He did not know whether he touched the gate or what, but

the iron casting fell, point down, and struck Nye, who was at work loading cases upon the elevator in the basement, in the head. The point of the casting entered Nye's head and he died without indication of consciousness.

If it were necessary in this case to pass upon the question of due care on the part of Nye in being in the elevator while work was going on above, we should have great difficulty in holding that there was any evidence for the jury. It is apparent that he knew what was going on above him, and must have known that if anything fell he was in danger of being struck. He was nineteen years old, had worked for the defendant for four months, and knew what was going on at the time. Without passing upon this question, we prefer to rest the case upon the ground that there was no evidence of negligence of the defendant under the statute.

The first allegation of negligence is "that the fall of said piece of iron, was caused by reason of a defect or defects in the condition of the ways, works and machinery," etc. The only defective condition was the breaking of the casting several days before the accident. This defective condition caused no injury to any one. It was not the proximate cause of the accident. It was the duty of the defendant to remedy the defect, and while this was being done the accident happened through the carelessness of the fellow servant of Nye. The statute does not cover such a case. An appliance does not become a part of the ways, works and machinery until it becomes a part of the permanent structure or plant. See *Beique* v. *Hosmer*, 169 Mass. 541. In *Ashley* v. *Hart*, 147 Mass. 573, 575, it was held that the statute "does not give a right of action against the employer for the negligence of a fellow servant in handling or using a machine, tool, or appliance which is itself in a proper condition." See also *O'Connor* v. *Neal*, 153 Mass. 281.

The second count alleges negligence of the superintendent in several particulars. First, "In the failure to secure or cause to be secured said piece of iron." The answer to this is that the superintendent sent a man to secure the piece of iron, and that, while so doing, through a temporary act of negligence on the part of the workman, the accident happened. The next act of negligence alleged is that the superintendent set Nye

to work in the elevator while the work was going on overhead. We find no evidence to support this allegation. The same answer is true of the allegation that the superintendent caused the repairs to be made by an incompetent and unskilful man, and in failing to supply him with proper tools to do the work. Lastly, it is alleged that there was negligence in failing to warn Nye that repairs were being made upon the elevator and well guards. But the evidence shows that Nye knew what was going on above him, and there was no occasion to warn him. See *Kanz* v. *Page,* 168 Mass. 217.

*Exceptions overruled.*

*C. F. Choate, Jr.,* for the plaintiffs.
*C. S. Knowles,* for the defendant.